## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **BERRY LAW PLLC**<br>    **1717 Pennsylvania Ave., NW**<br>    **Suite 450**<br>    **Washington, DC 20006,**<br><br>        **Plaintiff,**<br><br>**v.**<br><br>**KRAFT FOODS GLOBAL INC.**<br>    **Three Lakes Drive**<br>    **Northfield, IL 60093**<br><br>        **Defendant.** | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT
## JURY TRIAL DEMANDED

Plaintiff Berry Law PLLC ("Berry Law") files this action for recovery of compensation for legal services rendered to Defendant Kraft Foods Global Inc. ("Kraft"). In support of this Complaint, Plaintiff would show the Court as follows.

      1.    Plaintiff Berry Law PLLC resides in the District of Columbia at 1717 Pennsylvania Avenue, NW, Suite 450, Washington, DC 20006. Its principal, R. Stephen Berry, is licensed to practice law in the District of Columbia. Defendant Kraft Foods Global Inc. ("Kraft") resides at Three Lakes Drive, Northfield, Illinois and is incorporated in the state of Delaware.

### JURISDICTION

      2.    Pursuant to Title 28 §1332(a) this Court has jurisdiction over this matter. The matter in controversy exceeds in sum or value $75,000. Plaintiff resides in the District of Columbia and Defendant is incorporated in the state of Delaware and resides in the state of Illinois.

3.     In mid-August 2010 Berry Law brought to the attention of Kraft its possible monopoly overcharge claim against subsidiaries of News Corporation, News America Marketing FSI LLC and News America Marketing In-Store LLC (collectively "News") for monopolization and tying in the relevant markets for the sale of in-store promotion services and free-standing-insert coupons placed in newspapers.

4.     The Firm's extensive analysis indicates that such violations may have resulted in estimated monopoly overcharges paid by Kraft amounting to tens of millions of dollars.  To resolve litigation by four of its competitors in the relevant markets, News has already paid over $650 million in lost profits based upon the assertion of the same monopolization and tying claims.

## NATURE OF SERVICES PROVIDED.

5.     When Kraft's possible claim was brought to his attention, Kraft's Chief Litigation Counsel requested more analysis and Berry Law commenced to provide legal advice on numerous issues over the next five months.

6.     As indicated in the attached fee Declaration of R. Stephen Berry (Exhibit A), Berry Law (a) prepared multiple drafts of a forty-two (42) page evaluation memorandum for Kraft analyzing liability and damage issues, the large recoveries in the prior competitor actions, etc.; (b) compiled a PowerPoint presentation summarizing primary evaluation issues; (c) met in Chicago with Kraft's Chief Litigation Counsel and other counsel to discuss claims; (d) interviewed (with Kraft's Chief Litigation Counsel) multiple employees of Kraft after analyzing its News contracts and other communications with News; (e) provided general tactical and strategic advice; (f) coordinated among Kraft and other consumer packaged goods companies as to possible joint litigation and cost sharing; and (g) provided memoranda analyzing Kraft's claims in the relevant market for the sale of FSI

coupons alone (after a request by Kraft's staff antitrust counsel), as well as a memoranda analyzing contractual waiver issues.

7.     As requested by Kraft's Chief Litigation Counsel, the primary evaluation memorandum was prepared in part for submission to top management of Kraft and, upon information and belief, was forwarded at the very least to Kraft's General Counsel in early 2011.

8.     On February 19, 2012 Kraft terminated Berry Law's representation, cryptically indicating that it did not believe that some of its purchases from News were overcharged and stating that its damages were uncertain. No analysis was provided as to why Kraft no longer believed in the merits of its claims or why the same monopolization and tying claims (which had already generated settlements between News and its competitors of over $650 million) were not valid or worth assertion.

9.     Other Berry Law clients have filed individual actions against News in the United States District Court for the Eastern District of Michigan after substantial merits analysis and several months of pre-Complaint negotiation with News. *The Dial Corporation, H. J. Heinz Company v. News Corporation, et al.*, No. 2:12-cv-15613-AJT-MKM (E.D. Mich., filed December 21, 2012).

10.     At the time of the completion of the Berry Law evaluation memorandum with Kraft's adjustments, Kraft Chief Litigation Counsel on November 10, 2010 noted that this matter was "moving pretty fast" and that he wished to brief his General Counsel to enable him to have discussions about the claim with News.

11.     Previously Berry Law had been informed that Kraft's General Counsel intended to honor a commitment he had made to News to discuss or negotiate Kraft's claims with News before Kraft commenced any litigation.

12.     On information and belief, Berry Law was terminated after discussion or negotiation of Kraft claims with News occurred.  Upon further information and belief, it is not unlikely that News indicated to Kraft that it did not wish to discuss terms with Kraft if it continued to be represented by Berry Law.  News has expressed the fear that any terms given to one consumer packaged goods company (particularly one with a large claim) might be learned by Berry Law's other clients and potential claimants against News and their negotiations.

### REPRESENTATION COMMUNICATIONS

13.     After a meeting in Chicago with Kraft's Chief Litigation Counsel on October 28, 2010, Berry Law sent a retention email to that counsel.  He responded "you have asked about fees for work to create the proposal to share with management.  FWIW [For what it's worth], we have never paid for that work as far as I know for any outside counsel.  We've viewed it as part of what we expect counsel to do in bringing to us a proposal to use their firm.  I don't think this will be a big issue for you in view of the size of the ultimate payout should this matter proceed favorably, but if it helps you to get comfortable proceeding as I suggest, *I can tell you that presuming we move forward, you will be our counsel on this matter.  That requires no further approvals.*" (emphasis supplied).

14.     Berry Law then asked that it be able to carry its evaluation time and bill it later if the matter "moved forward.".

15.     On information and belief, in January or February of 2012, Kraft "moved forward" with pre-Complaint discussion or negotiation with News (as it had promised News' General Counsel previously).  Nonetheless, Berry Law was not continued as counsel on this matter.

4

## FEES AND COSTS

16.     On August 9, 2012 Berry Law forwarded a *quantum meruit* fee statement detailing the fees it believed were owed for the analysis and advice it had provided Kraft as described herein.

17.     In correspondence of September 20, 2012, Berry Law noted that payment of the invoice was ten (10) days past due and asked Kraft to advise it in the next five (5) business days whether it intended to honor this billing.

18.     On October 5, 2012, Berry Law made further inquiry and offered to compromise the matter if an understanding could be reached as to payment within ten (10) days.

19.     No substantive responses to the above communications have been received from Kraft.

20.     Berry Law is entitled to compensation for the substantial legal services provided to Kraft whether or not Kraft, as a consequence of its discussion or negotiation with News based in part on the evaluation materials provided by Berry Law, obtained anything of value in recompense for its overcharge claims.

21.     At the very least, if Kraft compensation has not been received from News (or is to be received), the extensive evaluation materials and advice provided to Kraft by antitrust counsel with over three decades of experience provided the basis for Kraft's counsel to have fully informed pre-litigation discussions with News and possibly negotiations. Therefore, Kraft received substantial uncompensated value from Berry Law.

22.     The Firm is not seeking contingent compensation from any value received by Kraft from News.  Rather, it seeks the value of services which enabled and facilitated Kraft's discussion or negotiation with News and its possible compensation by News.

23.     Berry Law performed all services connected with representation of Kraft with the expectation of receiving non-contingent and/or contingent compensation for Plaintiff's work on Defendant's behalf.

24.     Berry Law is entitled to the reasonable value of the services rendered to Kraft. A reasonable value of its time expended is $187,593.75, billed at the usual and customary rates for the senior counsel and paralegal assistance provided within the antitrust specialty.

25.     Berry Law incurred expenses in connection with representation of Kraft of $3,934.95. Ex. A ¶ 6.

26.     The supporting Declaration of R. Stephen Berry (Exhibit A ¶¶ 3, 5 hereto) documents the nature of the services rendered. A fee statement detailing services on a daily basis by subject is available *in camera*, should the Court desire.

## CLAIMS FOR RELIEF

27.     Berry Law is entitled to recovery of the above specified compensation and costs because it has a contract implied in fact with the Defendant.

28.     In the alternative, Berry Law is entitled to recover the above specified compensation because it has a quasi-contract, a contract implied in law.

29.     Berry Law may recover in *quantum meruit* because it has rendered valuable services to Kraft. Those services were accepted by the Kraft and enjoyed by Kraft. Without payment, Kraft would be unjustly enriched.

30.     Berry Law reasonably notified Kraft that it expected to be paid.

WHEREFORE, Berry Law requests the following relief:

(a)   Judgment be entered for the sum of $187,593.75 plus interest from thirty (30) days after the billing was rendered, that is, September 8, 2012;

(b)   Judgment be entered for costs in the amount of $3,934.95 incurred in the course of the performance of duties; and

(c)   Any further relief be granted as to which Plaintiff is entitled, including the award of attorney's fees and expenses as allowed by law for the pursuit of this matter.

Dated: April 10, 2013                              Respectfully submitted

/s/_____
R. Stephen Berry (DC Bar No. 234815)
BERRY LAW PLLC
1717 Pennsylvania Avenue, NW
Suite 450
Washington, DC 20006
Telephone: (202) 296-3020
Telecopy: (202) 296-3038
Email: sberry@berrylawpllc.com

7